U.S. Court of Appeals Docket No. 21-56295
Lower Court Docket No. 2:20-cv-04122-CBM-AFM

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

### MOVING OXNARD FORWARD, INC.,
*Plaintiff and Appellant,*

### vs.

### LOURDES LOPEZ, in her official capacity as City Clerk for the City of Oxnard,
*Defendant and Appellee.*

---

## **Supplemental Brief Per Court Order**

---

On Appeal From Order
Of The United States District Court
For The Central District of California
The Honorable Consuelo B. Marshall, District Judge

---

Holly O. Whatley
hwhatley@chwlaw.us
Liliane M. Wyckoff
lwyckoff@chwlaw.us
**COLANTUONO, HIGHSMITH & WHATLEY, PC**
790 E. Colorado Boulevard, Suite 850
Pasadena, California 91101-2109
Telephone: (213) 542-5700
Facsimile: (213) 542-5710

Attorneys for Lourdes Lopez, in her official capacity as City Clerk for the City of Oxnard

403242.3

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION AND SUMMARY OF ARGUMENT .............5

II.     ARGUMENT .......................................................................................6

        A.      *EDDLEMAN* AND *LAIR II* ARE IN ACCORD
             WITH SUPREME COURT PRECEDENT
             REGARDING THE QUANTUM OF PROOF
             NECESSARY TO SHOW A SUFFICIENTLY
             IMPORTANT STATE INTEREST .........................................6

        B.      *LAIR II'S* PROHIBITION ON CONSIDERING
             LEGISLATIVE MOTIVE REMAINS GOOD LAW........... 10

        C.      *EDDLEMAN* AND *LAIR II* CAN BE
             HARMONIZED WITH SUPREME COURT
             PRECEDENT ON THE CLOSELY DRAWN
             ISSUE, TOO ........................................................................ 12

III.    CONCLUSION.............................................................................. 14

# TABLE OF AUTHORITIES

<u>Page(s)</u>

**Federal Cases**

*Boardman v. Inslee,*
    978 F.3d 1092 (9th Cir. 2020) ................................................................ 11

*Buckley v. Valeo,*
    424 U.S. 1 (1976) ........................................................................... 6, 12, 13

*Citizens United v. Federal Election Com'n,*
    558 U.S. 310 (2010) .......................................................................... 6, 7, 9

*Daggett v. Comm'n on Governmental Ethics & Election Pracs.,*
    205 F.3d 445 (1st Cir. 2000) ................................................................. 11

*Daggett v. Webster,*
    81 F. Supp. 2d 128 (D. Me.) ................................................................. 11

*Dobbs v. Jackson Women's Health Org.,*
    597 U.S. 215 (2022) ......................................................................... 11, 12

*Lair v. Bullock,*
    798 F.3d 736 (9th Cir. 2015) ................................................................... 7

*Lair v. Motl,*
    873 F.3d 1170 (9th Cir. 2017) ........................................................ *passim*

*McCutcheon v. Fed. Election Comm'n,*
    572 U.S. 185 (2014) ............................................................... 6, 9, 10, 14

*Montana Right to Life Ass'n v. Eddleman,*
    343 F.3d 1085 (9th Cir. 2003) ........................................................ *passim*

*Nixon v. Shrink Missouri Government PAC*
    (2000) 528 U.S. 377 ....................................................................... *passim*

*Randall v. Sorrell,*
  548 U.S. 230 (2006) ........................................................................ *passim*

*Thompson v. Hebdon,*
  589 U.S. 1 (2019) ................................................................. 5, 9, 11, 13

*United States v. O'Brien,*
  391 U.S. 367 (1968) ................................................................... 11

# I.

## <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

On June 16, 2025, this Court ordered , supplemental briefing to address whether *Montana Right to Life Ass'n v. Eddleman*, 343 F.3d 1085 (9th Cir. 2003) and *Lair v. Motl*, 873 F.3d 1170 (9th Cir. 2017) (*Lair II*) should be overruled to the extent that they articulate the threshold showing that a governmental defendant must make to justify any level of limitation on campaign contributions.

The City contends neither case need be overruled. *Thompson v. Hebdon*, 589 U.S. 1 (2019), instructed this Court to consider the "danger signs" identified in *Randall v. Sorrell*, 548 U.S. 230 (2006) in addition to existing First Amendment precedent. *Thompson*, 589 U.S. at 6. Had the Supreme Court intended to disapprove any part of *Eddleman* or *Lair II*, it would have done so in *Thompson*. Rather, *Eddleman*, *Lair II*, and *Randall* can all be harmonized.

To the extent this Court determines some portion of *Eddleman* or *Lair II* is inconsistent with *Randall* or *Thompson*, *Lair II*'s discussion prohibiting a motive inquiry as part of the "closely drawn" test should not be overruled. Neither *Randall* nor *Thompson* purports to overrule the longstanding principle that legislation is judged on its text, not on the alleged motivations of the legislature.

403242.3                                    5

## II.

## ARGUMENT

**A.** *EDDLEMAN* **AND** *LAIR II* **ARE IN ACCORD WITH SUPREME COURT PRECEDENT REGARDING THE QUANTUM OF PROOF NECESSARY TO SHOW A SUFFICIENTLY IMPORTANT STATE INTEREST**

Contribution limits survive First Amendment review if the government demonstrates the limits further a sufficiently important state interest in preventing quid pro quo corruption or the appearance of such corruption and closely draws the limits to avoid unnecessarily abridging associational freedoms. *Buckley v. Valeo*, 424 U.S. 1, 25 (1976); *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 206 (2014).

The first showing a governmental defendant must make is that the campaign contribution limit furthers a sufficiently important state interest. *Lair II* describes this first step as "a threshold question whether any level of limitation is justified." *Lair II*, 873 F.3d at 1178. The only valid state interest justifying contribution limits is "the risk of actual or perceived quid pro quo corruption." *Citizens United v. Federal Election Com'n*, 558 U.S. 310, 360 (2010); *McCutcheon*, 572 U.S. 207.

As this Court has already recognized, *Eddleman*'s holding that "preventing corruption or the appearance of corruption" includes "the broader threat from politicians too compliant with the wishes of large contributions" was abrogated by the Supreme Court's decision in *Citizens United*, 558 U.S. 310 that the only form of corruption a contribution limit can target is quid pro quo corruption. *Lair v. Bullock*, 798 F.3d 736, 746 (9th Cir. 2015) (*Lair I*). *Lair II* applies this quid pro quo corruption standard. *Lair II*, 873 F.3d at 1178.

However, as to the amount of proof necessary to show a valid state interest, both *Eddleman* and *Lair II* remain good law. No court has defined a strict minimum amount of evidence necessary for the government to carry its burden. But the Supreme Court in *Nixon v. Shrink Missouri Government PAC* (2000) 528 U.S. 377 found the following evidence sufficient to support the government's claimed interest in preventing corruption: (1) a legislative report revealing some elected officials had favored large donors; (2) a 74% yes vote on the proposition establishing the contribution limit; and (3) a lack of any evidence from the party challenging the contribution limit contradicting the government's evidence. *Shrink Missouri*, 528 U.S. at 394–395.

*Eddleman* directly followed *Shrink Missouri* on the amount of evidence necessary to support the government's interest. The record contained testimony from legislators that special interests funnel

403242.3                                    7

money into campaigns to get results on specific issues, a letter from a legislator urging his colleagues to vote to support insurance companies who were large donors, and the results of a public survey showing a supermajority of voters believed corruption was occurring. *Eddleman*, 343 F.3d at 1092–1093.

*Lair II* also directly follows *Shrink Missouri* on the evidentiary requirements, framing the threshold test as follows:

> To satisfy its burden, Montana must show the risk of actual or perceived quid pro quo corruption is more than "mere conjecture." *Id*. (quoting *Shrink*, 528 U.S. at 392, 120 S.Ct. 897); see *McCutcheon*, 134 S.Ct. at 1452 (reiterating the "mere conjecture" standard). Montana need not show any instances of actual quid pro quo corruption. See *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1121 (9th Cir. 2011). It must show "only that the perceived threat [is] not ... 'illusory.' " *Eddleman*, 343 F.3d at 1092 (quoting *Buckley*, 424 U.S. at 27, 96 S.Ct. 612).

*Lair II*, 873 F.3d at 1178. The plaintiffs in *Lair II* conceded that the state had met its burden of proving the risk was more than mere conjecture. *Id*. at 1179.

403242.3          8

*Shrink Missouri*'s articulation of the threshold issue not been questioned or abrogated by any subsequent Supreme Court precedent. Neither *Randall* nor *Thompson* criticized *Shrink Missouri*'s statement of the quantum of evidence necessary to show a significant state interest. To the contrary, both *Randall* and *Thompson* cite *Shrink Missouri* with approval. *Randall*, 548 U.S. at 232; *Thompson*, 589 U.S. at 5. *Randall* assumed the interest had been shown, and focused only on whether the "danger signs" suggested the limits were not closely tailored to achieve that interest. *Randall*, 548 U.S. at 248–249.

The strongest evidence supporting the continuing validity of the *Shrink Missouri* evidentiary standard followed in *Eddleman* and *Lair II* appears in *Thompson*. The *Thompson* opinion noted that the Ninth Circuit had questioned the continuing validity of the *Shrink Missouri* standard given *McCutcheon* and *Citizens United*. *Thompson*, 589 U.S. at 3. But instead of taking this opportunity to overrule *Shrink Missouri*, the Supreme Court **accepted** the Ninth Circuit's holding that the government had established the existence of a legitimate state interest, criticizing **only** the refusal to apply the *Randall* danger signs when determining if the limits were closely tailored to achieve that interest. *Thompson*, 589 U.S. at 4–5.

Thus, no conflict exists between *Eddleman* and *Lair II* and any Supreme Court precedent on the evidence necessary to show an appearance of quid pro quo corruption justifying campaign

403242.3

contribution limits. *Shrink Missouri* continues to provide the rule this Court should follow in evaluating the "threshold question whether any level of limitation is justified." There is no need to overrule *Eddleman* or *Lair II*.

B.    *LAIR II*'S PROHIBITION ON CONSIDERING LEGISLATIVE MOTIVE REMAINS GOOD LAW

In *Lair II*, plaintiffs challenged Montana's voter-approved campaign contribution limits as violating the First Amendment. In the voter information pamphlet distributed to voters before the election, the measure's proponents argued "[t]here is just way too much money in Montana politics." *Lair II*, 873 F.3d at 1183. They argued the measure would prevent "[m]oney from special interests and the wealthy" from "drowning out the voice of regular people." *Id*. at 1184. The district court concluded this demonstrated an improper motive inconsistent with the holding in *McCutcheon*, 572 U.S. 185, that only the prevention of quid pro quo corruption is a sufficient government interest to support contribution limits. *Lair II*, 873 F.3d at 1183.

This Court reversed. "The district court incorrectly cast the narrow focus test as a motive inquiry that looks at the voters' underlying intent when they enacted the limits. The narrow focus test, however, is a tailoring test, not a motive test." *Lair II*, 873 F.3d at 1184. The opinion expressly disapproved the district court's

403242.3                                    10

reasoning, noting "[w]e are aware of no case looking to underlying legislative or voter intent in making" this evaluation, and concluded the applicable analysis is of "the actual content and effect of the limits . . .." *Id*. It then analyzed the limits and concluded they passed constitutional muster under **both** the *Eddleman* analysis and the *Randall* test. *Id*. at 1184–1187.

*Lair II* is consistent with ample precedent that courts "will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." *United States v. O'Brien*, 391 U.S. 367, 383 (1968); see also, e.g., *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 253 (2022). And this is especially so when the challenged law was approved by voters, despite alleged "invidious motivations" of the measure's sponsors. See, *Boardman v. Inslee*, 978 F.3d 1092, 1119 (9th Cir. 2020). "The search for legislative purpose or motive is always dangerous; it is even more difficult in the case of an initiative or referendum involving all the voters, where it is impossible to know what the multitude read, heard or believed in deciding how to vote." *Daggett v. Webster*, 81 F. Supp. 2d 128, 135, n.18 (D. Me.), aff'd sub nom. *Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 205 F.3d 445 (1st Cir. 2000).

*Randall* and *Thompson* provide no indication that the Supreme Court intended to allow a motive inquiry in examining campaign contribution limits. Each of the *Randall* danger signs focuses solely on

the law's text , requiring an objective analysis of the challenged limits. The Supreme Court has never endorsed a subjective motive inquiry when evaluating campaign contribution limits. To the contrary, the Supreme Court has recently reaffirmed that legislative motive inquiries are improper. *Dobbs*, 597 U.S. at 253 (collecting cases). *Lair II*'s prohibition on motive inquiries in the campaign contribution limit context is well reasoned and remains good law.

## C.    *EDDLEMAN* AND *LAIR II* CAN BE HARMONIZED WITH SUPREME COURT PRECEDENT ON THE CLOSELY DRAWN ISSUE, TOO

On the closely drawn issue, the *Eddleman* and *Lair II* opinions can be easily harmonized with *Randall* and need not be overruled. Once the government has established an interest in preventing corruption or the appearance of corruption, the next step is to determine whether the limits are closely drawn to address that issue. *Buckley*, 424 U.S. at 21–22, and *Shrink Missouri*, 528 U.S. at 395–397 established the test, as summarized in *Randall*: a court must determine whether the contribution limits "prevent candidates from 'amassing the resources necessary for effective [campaign] advocacy,' [cite]; whether they magnify the advantages of incumbency to the point where they put challengers to a significant disadvantage; in a word, whether they are too low and too strict to survive First Amendment scrutiny." *Randall*, 548 U.S. at 248.

403242.3                                     12

*Thompson* then reiterated that, though *Randall* was a plurality decision, lower courts must nonetheless review the four danger signs identified in *Randall* when determining whether to apply close scrutiny. The "danger signs" are: "(1) The limits are set per election cycle, rather than divided between primary and general elections; (2) the limits apply to contributions from political parties; (3) the limits are the lowest in the Nation; and (4) the limits are below those we have previously upheld." *Randall*, 548 U.S. at 249–52; also *Thompson*, 589 U.S. at 4.

*Randall*'s danger signs merely add more detail to the *Buckley* and *Shrink Missouri* factors. Thus, they are additive to those articulated in *Eddleman* and *Lair*, not contradictory. *Eddleman* (decided before *Randall*) summarized the applicable test as whether the limitations "(a) focus narrowly on the state's interest, (b) leave the contributor free to affiliate with a candidate, and (c) allow the candidate to amass sufficient resources to wage an effective campaign." *Eddleman*, 343 F.3d at 1092. *Randall*'s danger signs align with and expand upon *Eddleman*'s third factor, whether the candidate can wage an effective campaign. Similarly, *Lair II* (decided after *Randall*) applied the *Randall* danger signs and the *Eddleman* factors and concluded the same result would be reached under either analysis. *Lair II*, 873 F.3d at 1186–1187. There is no contradiction

403242.3

13

between Ninth Circuit and Supreme Court precedent on this issue. Thus, this Court need not overrule either decision.

### III.

### CONCLUSION

The threshold inquiry in *Eddleman* and *Lair II* follows the Supreme Court's holding in *Shrink Missouri*, which has not been questioned, abrogated, or overruled by subsequent Supreme Court decisions. The "quantum of evidence necessary to justify a legitimate state interest" is that the state can show the threat is more than "mere conjecture." *McCutcheon*, 572 U.S. 210, quoting *Shrink Missouri*, 528 U.S. at 392. There is no need to overrule *Eddleman* or *Lair II* on this issue, nor on any other issue that might be considered by this Court.

DATED: July 7, 2025

**COLANTUONO, HIGHSMITH & WHATLEY, PC**

s/ Holly O. Whatley

HOLLY O. WHATLEY
LILIANE M. WYCKOFF
Attorneys for City of Oxnard

403242.3

14

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 21-56295

I am the attorney or self-represented party.

**This brief contains** | 2,032 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

⦿ complies with the length limit designated by court order dated | June 16, 2025 |.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Holly O. Whatley | **Date** | July 7, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*